[Cite as *State v. Thompson*, 2013-Ohio-4793.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 99467**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RONALD J. THOMPSON

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-566382

**BEFORE:** Kilbane, J., E.A. Gallagher, P.J., and McCormack, J.

**RELEASED AND JOURNALIZED:** October 31, 2013

**ATTORNEY FOR APPELLANT**

Britta M. Barthol
P.O. Box 218
Northfield, Ohio 44067

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Stephanie Anderson
T. Allan Regas
Daniel T. Van
Assistant County Prosecutors
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} Defendant-appellant, Ronald Thompson ("Thompson"), appeals his convictions for felonious assault and having a weapon while under disability, and the trial court's imposition of court costs. For the reasons set forth below, we affirm his convictions, but remand for the limited purpose to allow Thompson to move the court for waiver of court costs.

{¶2} In September 2012, Thompson was charged with two counts of having a weapon while under disability ("HWWUD") and one count of felonious assault. Each HWWUD count carried a weapons forfeiture specification. The felonious assault count carried one-and three-year firearm specifications, notice of prior conviction, a repeat violent offender specification, and a weapons forfeiture specification. The matter proceeded to a jury trial in December 2012, at which the following evidence was adduced.[1]

{¶3} Alex Jordan ("Jordan") testified that on the evening of August 27, 2011, he was walking to his apartment on East 131st Street in Garfield Heights, Ohio. As he was walking, he observed Thompson, a tenant in the same building as Jordan, cross the street from a gas station and meet up with him at the upcoming intersection. Jordan and Thompson have exchanged words "back and forth" in the past. As a result, Jordan laughed and told Thompson, "you stay out of my way, and I'll stay out of your way."

---

[1]Prior to the start of trial, Thompson stipulated to the prior convictions listed in the indictment.

Thompson replied, "don't laugh at me" and then "squared off * * * — like he was going to hit [Jordan]."  Jordan did the same thing, expecting that Thompson was going to punch him.  Thompson then put his hand under his shirt and pulled out a black gun with a long barrel and dark wood handle.  Jordan saw the gun and attempted to diffuse the situation by telling Thompson "I got no problem with you."  Thompson then got on his cell phone and continued walking back to the apartment building.  Jordan also walked back to the apartment building.

{¶4}    Thompson entered the building first and was standing outside his apartment door when Jordan entered the building.  Jordan told Thompson,

> what's up with you?  Like, what's the problem?  Like, I don't have no problem with you, I don't bother you.  I don't even know you, and you want to pull a gun on me like we didn't talk already.  I told you, you stay out of my way, and I'll stay out of your way.

Thompson then pulled out his gun, pointed it at Jordan, and told him "I'll bust you."  Jordan took this to mean that Thompson was going to shoot him.  Thompson then went inside his apartment and Jordan, fearing for his life, exited to the front of the building.  Jordan called his friend for a ride.  While he was on the phone, he heard a gunshot coming from behind the building.  Jordan testified that the gunshot "was a warning shot for me, * * * like letting me know that he'll shoot the gun[.]"  Jordan's friend told him to call the police, which he did.  While on the phone with the dispatcher, Jordan observed Thompson walk away from the apartment building down East 131st Street and then back toward the building.  The dispatcher instructed Jordan to stay away from Thompson, so he walked across the street.

**{¶5}** Garfield Heights police officer Bryan Holt ("Holt") responded to the scene. He observed Thompson walking back toward the apartment building. He ordered Thompson to take his hands out of his pockets. Thompson responded by pulling out a long-barreled revolver from his waistband and running eastbound toward Saybrook Avenue. Holt pursued Thompson, and as he chased him, he ordered him to stop. Thompson continued to run, carrying the gun in his hand. Holt testified that he did not observe Thompson drop the gun while he chased after him. Holt eventually lost sight of Thompson. Holt later located the black, long-barreled gun with a wooden handle on the driveway of a house on Saybrook Avenue, which was two houses down from where Thompson was arrested. Jordan testified that while Holt was chasing after Thompson, he observed Thompson drop the gun and continue running.

**{¶6}** Garfield Heights police officer Robert Jarzembak ("Jarzembak") testified that he also responded to the scene. He searched the area for approximately one hour before he found Thompson hiding behind a garage in the backyard of a house on Saybrook Avenue. Jarzembak ordered Thompson on the ground, handcuffed him, and patted him down for weapons, none of which were found. Jarzembak then placed Thompson in his police cruiser and waited for Holt to arrive with Jordan, who identified Thompson as the individual with the gun. Jarzembak transported Thompson to the city jail, where he swabbed Thompson's hands for gunshot residue.

**{¶7}** Martin Lewis, forensic scientist with the Bureau of Criminal Investigation, testified that he performed the gunshot residue test on the kit he received from the

Garfield Heights Police Department. He testified that Thompson's right hand tested positive for gunshot residue.

{¶8} Thompson testified on his own behalf. He acknowledged that he lived in the same apartment building as Jordan, and that he and Jordan have "exchanged words" on previous occasions. On the night of the incident, he observed Jordan when he exited the store at the gas station. He walked past Jordan, who laughed at him. He turned around and asked Jordan, "what you laughing at?" Thompson and Jordan started arguing and then Thompson walked away from him. He continued to walk to his apartment. While Thompson was opening his apartment door, Jordan walked toward him. He testified that they exchanged words and then went inside his apartment and shut the door. Thompson further testified that he did not have a gun on him during either encounter with Jordan. Inside his apartment, Thompson made a phone call, had a beer, and smoked a cigarette. He then left the building through the back door to sell drugs to his friend's father. After the drug sale, he left with his friend "KC." On their way back to Thompson's apartment, they observed the police. KC observed the police first and took off running. Thompson continued to walk toward his apartment. When the police asked him to stop, he ran because he had drugs in his possession. Thompson testified that he did not have a gun in his possession when the police instructed him to stop.

{¶9} On cross-examination, Thompson testified that he ran from the police because he had drugs in his possession and there was a warrant out for his arrest. He testified that he never pulled out a gun, never threatened Jordan, and he never pulled out a

gun while running away from Holt. He also testified that he has been convicted twice for drug possession and HWWUD, and once for felonious assault, receiving stolen property, and assault on a police officer.

{¶10} At the conclusion of trial, the jury returned a guilty verdict on all counts and specifications. The trial court found Thompson guilty of the repeat violent offender specification, which was tried to the bench. For purposes of sentencing, the trial court merged both HWWUD counts and sentenced Thompson on Count 1. The trial court also merged the one-year firearm specification into the three-year firearm specification. The court sentenced Thompson to one year in prison on the HWWUD count and two years in prison on the felonious assault count. The trial court ordered that the three years on the firearm specification be served prior to and consecutive to his felonious assault charge. The court further ordered that the sentences be served concurrent to each other for an aggregate of five years in prison. On January 29, 2013, the trial court filed its judgment entry. In that entry, the trial court imposed court costs on Thompson; however, the court had not mentioned court costs during the sentencing hearing.

## Assignment of Error One

The evidence was insufficient as a matter of law to support a finding beyond a reasonable doubt that [Thompson] was guilty of felonious assault with firearm specifications.

## Assignment of Error Two

[Thompson's] convictions for felonious assault with firearm specifications and HWWUD were against the manifest weight of the evidence.

## Assignment of Error Three

The trial court erred and deprived Thompson of his property without due process of law and his right under the Sixth Amendment of the United States Constitution when it imposed court costs outside his presence.

## Sufficiency of the Evidence

{¶11} In the first assignment of error, Thompson challenges the sufficiency of evidence for his felonious assault conviction with the one- and three-year firearm specifications.

{¶12} The Ohio Supreme Court in *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, 900 N.E.2d 565, ¶ 113, explained the standard for sufficiency of the evidence as follows:

> Raising the question of whether the evidence is legally sufficient to support the jury verdict as a matter of law invokes a due process concern. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 386, 678 N.E.2d 541. In reviewing such a challenge, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, following *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560.

{¶13} Thompson was convicted of felonious assault in violation of R.C. 2903.11(A)(2), which provides that: "[n]o person shall knowingly * * * [c]ause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance." Thompson, relying on *State v. Brooks*, 44 Ohio St.3d 185, 542 N.E.2d 636 (1989), and *State v. Green*, 58 Ohio St.3d 239, 569 N.E.2d 1038 (1991), argues there is insufficient evidence to sustain the felonious assault conviction because there was no evidence that he intended to cause Jordan harm with a gun. Rather, he

claims the evidence demonstrates that he and Jordan "had a history of words being exchanged and [they] did not get along."

{¶14} The Ohio Supreme Court in *Brooks*, addressed "whether the pointing of a deadly weapon is an 'attempt to cause physical harm' to another by means of a deadly weapon as encompassed in the definition of 'felonious assault.'" *Id.* at 189. In *Brooks*, the defendant was involved in a "heated conversation" with a barmaid, which resulted in the defendant pointing a handgun at the woman's face and stating, "B****, I will kill you." *Id.* at 187. The Ohio Supreme Court upheld Brooks's felonious assault conviction based upon the totality of the circumstances. However, the court went on to hold that, "[t]he act of pointing a deadly weapon at another, without additional evidence regarding the actor's intention, is insufficient to convict a defendant of the offense of 'felonious assault' as defined by R.C. 2903.11(A)(2)." *Id.* at the syllabus.

{¶15} In *Green*, the Ohio Supreme Court reviewed its decision in *Brooks* and explained "It can be readily gleaned from our holding in *Brooks* * * * that the additional evidence needed to uphold a felonious assault charge could include verbal threats as perceived by a reasonable person under the circumstances." *Id.* at 241. Therefore, the act of pointing a deadly weapon at another, coupled with a threat, indicates an intention to use such weapon, and is sufficient evidence to convict a defendant of the offense of "felonious assault" as defined by R.C. 2903.11(A)(2).

{¶16} Here, Jordan and Thompson both testified that they have had verbal altercations on past occasions. On the night of the incident, Thompson and Jordan

"squared off" and Thompson pulled out a gun from under his shirt. Jordan felt that he needed to diffuse the situation because they shared the same apartment building. When he talked to Thompson again in the apartment building, Thompson pulled out his gun, pointed it at Jordan, and told him "I'll bust you." Jordan testified that he took this to mean that Thompson was going to shoot him. Thompson then went inside his apartment and Jordan, who feared for his life, exited to the front of the building. While he was on the phone, he heard a gunshot coming from behind the building. Jordan testified that the gunshot "was a warning shot for me, * * * like letting me know that he'll shoot the gun[.]" When viewing this evidence in a light most favorable to the State, we find that Thompson's act of pointing the gun at Jordan, coupled with his threat, "I'll bust you," constitutes sufficient evidence to convict Thompson of felonious assault.

{¶17} We further find sufficient evidence to sustain the firearm specifications. Jordan and Holt both testified that they observed Thompson with a black gun that had a long barrel and dark wood handle. Jordan testified that he heard a gunshot shortly after their encounter, and Holt found the identical revolver on a driveway of a house that was two houses from where Thompson was apprehended. This evidence in combination with the positive results for gunshot residue on Thompson's right hand is sufficient to demonstrate that a gun was used during the incident.

{¶18} Therefore, the first assignment of error is overruled.

<u>Manifest Weight of the Evidence</u>

{¶19} In the second assignment of error, Thompson argues that his felonious

assault and HWWUD convictions are against the manifest weight of the evidence. In reviewing a manifest weight challenge, the Ohio Supreme Court in *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25, has stated:

> [T]he reviewing court asks whose evidence is more persuasive — the state's or the defendant's? * * * "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." [*State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997)], citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652.

**{¶20}** Moreover, an appellate court may not merely substitute its view for that of the jury, but must find that "'in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 485 N.E.2d 717 (1st Dist.1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin*.

**{¶21}** In support of his argument, Thompson cites to inconsistencies in the testimony such as: (1) Jordan's testimony that he confronted Thompson after he pulled a gun out on him; (2 ) Jordan's testimony on cross-examination that it was dark and he could not see the object thrown by Thompson; (3) Holt's testimony that he did not observe Thompson throw anything on the ground while he was chasing him; (4) Holt's testimony that he did not observe the gun in the driveway while chasing Thompson; and (5) no credible evidence that Thompson shot a gun.

{¶22} In addressing a manifest weight of the evidence argument, we are guided by the presumption that the jury, or the trial court in a bench trial, "is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Accordingly, we afford great deference to the trier of fact's determination of witness credibility. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus.

{¶23} In the instant case, Jordan testified that he approached Thompson in the apartment building to attempt to diffuse the situation. He shared an apartment building with Thompson and was afraid that if he did not diffuse the situation immediately, Thompson would possibly kill him at a later date. Jordan testified on cross-examination that it was dark out, but he knew that Thompson threw the gun on the ground while he ran away from Holt. Holt corroborated Jordan's testimony by describing the same gun and finding the gun shortly after Thompson was apprehended. Their testimony was further corroborated by the gunshot residue test, which was positive for gunshot residue on Thompson's right hand. Moreover, Thompson admitted during his testimony that he and Jordan have had several verbal altercations in the past, he confronted Jordan twice and threatened him on the night of the incident and he ran away from Holt. Based on the foregoing, we do not find that the "jury clearly lost its way" and created such a manifest miscarriage of justice that the convictions must be reversed and a new trial ordered.

{¶24} Therefore, the second assignment of error is overruled.

<u>Court Costs</u>

**{¶25}** In the third assignment of error, Thompson argues the trial court erred in ordering him to pay court costs in its judgment entry without first notifying him of the imposition of court costs at the sentencing hearing. The state concedes this error on appeal.

**{¶26}** In *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, the Ohio Supreme Court held that it is reversible error under Crim.R. 43(A) for the trial court to impose court costs in its sentencing entry when it did not impose those costs in open court at the sentencing hearing. *Id.* at ¶ 22. The court reasoned that the defendant was denied the opportunity to claim indigency and to seek a waiver of the payment of court costs before the trial court because the trial court did not mention costs at the sentencing hearing. *Id.* The remedy in such a situation is a limited remand to the trial court for the defendant to seek a waiver of court costs. *Id.* at ¶ 23. Therefore, we reverse the portion of the trial court's judgment imposing court costs and remand the matter for the limited purpose to allow Thompson the opportunity to move the court for a waiver of payment of court costs. *See State v. Roberts*, 8th Dist. Cuyahoga No. 98973, 2013-Ohio-2202.

**{¶27}** The third assignment of error is sustained.

**{¶28}** Accordingly, judgment is affirmed in part, reversed in part and remanded for the limited purpose of allowing Thompson to seek a waiver of court costs.

It is ordered that appellee and appellant share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY EILEEN KILBANE, JUDGE

EILEEN A. GALLAGHER, P.J., and
TIM McCORMACK, J., CONCUR